IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | |
|---|---|
| William Ray Ward, | Case No. 8:12-cv-01480-DCN-JDA |
| Plaintiff, | **REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE** |
| v. | |
| William R. Byars; Lake E. Summers, | |
| Defendants. | |

This matter is before the Court on a motion to dismiss filed by Defendant William R. Byars ("Byars") [Doc. 26] and a motion to dismiss filed by Defendant Lake E. Summers ("Summers") [Doc. 37]. Plaintiff is proceeding pro se and brings this civil rights action pursuant to 42 U.S.C. § 1983. [Doc. 1.] Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2)(d), D.S.C., this magistrate judge is authorized to review all pretrial matters in cases filed under § 1983 and to submit findings and recommendations to the District Court.

Plaintiff filed this action on May 31, 2012 against Byars and Summers (collectively, "Defendants").[1] [Doc. 1.] Byars filed a motion to dismiss on August 30, 2012. [Doc. 26.] On September 20, 2012, Plaintiff filed a response in opposition to Byars's motion. [Doc. 30.] Summers filed a motion to dismiss on October 26, 2012 [Doc. 37], and Plaintiff filed a response to this motion on November 7, 2012 [Doc. 41]. Accordingly, the motions are now ripe for review.

---

[1] A prisoner's pleading is considered filed at the moment it is delivered to prison authorities for forwarding to the court. *See Houston v. Lack*, 487 U.S. 266, 270 (1988). In this case, construing the filing date in the light most favorable to Plaintiff, this action was filed on May 31, 2012. [Doc. 1-3 at 1 (envelope stamped as received by prison mailroom on May 31, 2012).]

## BACKGROUND

Plaintiff is an inmate of the South Carolina Department of Corrections ("SCDC") and is currently housed at Perry Correctional Institution. [Doc. 1 at 4.] Plaintiff alleges he initiated a grievance in June 2007 to collect money that SCDC illegally took from Plaintiff's prison industry wages over a twelve year period.[2] [*Id.* ¶ 2; Doc. 1-1.] Plaintiff alleges Summers, an outside attorney representing SCDC, held the grievance for over five years to prevent Plaintiff from collecting the money, which violates Plaintiff's due process and equal protection rights as well as the SCDC grievance procedure. [Doc. 1 ¶¶ 1–3.] Plaintiff also alleges he made Byars, the Director of SCDC, and Summers aware that, by not allowing Plaintiff's grievance to go forward so he could recover the illegally taken wages, Byars and Summers were violating Plaintiff's due process and equal protection rights. [*Id.* ¶¶ 1, 4–6.] Further, Plaintiff alleges he "has been subjected to different treatment than other inmates by [D]efendants solely to prevent [Defendants] from paying the money back that SCDC has illegally taken from him." [*Id.* ¶ 7.] Plaintiff seeks (1) $48,600, the amount allegedly owed to Plaintiff by SCDC for Plaintiff's work in the Evans Wire Harness

---

[2]Plaintiff was a lead plaintiff in a class action lawsuit by all prisoners who had participated in the Prison Industries Program at Evans Correctional Institution. [Doc. 15-1.] The class action raised the following claims: (1) SCDC improperly diverted a portion of the prisoners' hourly wages into a surplus fund; (2) the prisoners were paid less than the prevailing wage for similar work; and (3) the prisoners were entitled to immediate access to the portion of their wages that were placed in escrow pursuant to statute. [*Id.* at 3.] In an opinion filed on May 7, 2007, the South Carolina Supreme Court held that

> inmates working in the Prison Industries Program have a cognizable, state-created interest in having the [Department of Corrections] pay them according to the statutory scheme governing the Program, but they do not have a private right of action; instead, the [Department of Corrections'] internal grievance procedure, with recourse to the Administrative Law Court, is the appropriate way to have a prisoner's wage claim adjudicated.

[*Id.* at 6–7.]

Assembly Prison Industry Program; (2) an injunction preventing Defendants from taking disciplinary action against Plaintiff for initiating this action; (3) punitive damages in an amount determined by the Court; and (4) Plaintiff's costs of suit. [*Id.* at 4; *see id.* ¶¶ 8, 10.]

## APPLICABLE LAW

### Liberal Construction of Pro Se Complaint

Plaintiff brought this action pro se, which requires the Court to liberally construe his pleadings. *Estelle*, 429 U.S. 97, 106 (1976); *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam); *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978); *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978). Pro se pleadings are held to a less stringent standard than those drafted by attorneys. *Haines*, 404 U.S. at 520. Even under this less stringent standard, however, a pro se complaint is still subject to summary dismissal. *Id.* at 520–21. The mandated liberal construction means that only if the court can reasonably read the pleadings to state a valid claim on which the complainant could prevail, it should do so. *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999). A court may not construct the complainant's legal arguments for him. *Small v. Endicott*, 998 F.2d 411, 417–18 (7th Cir. 1993). Nor should a court "conjure up questions never squarely presented." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

### Requirements for a Cause of Action Under § 1983

This action is filed pursuant to 42 U.S.C. § 1983, which provides a private cause of action for constitutional violations by persons acting under color of state law. Section 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting

3

*Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). Accordingly, a civil action under § 1983 allows "a party who has been deprived of a federal right under the color of state law to seek relief." *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 707 (1999).

Section 1983 provides, in relevant part,

> "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or any person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . ."

42 U.S.C. § 1983. To establish a claim under § 1983, a plaintiff must prove two elements: (1) that the defendant "deprived [the plaintiff] of a right secured by the Constitution and laws of the United States" and (2) that the defendant "deprived [the plaintiff] of this constitutional right under color of [State] statute, ordinance, regulation, custom, or usage." *Mentavlos v. Anderson*, 249 F.3d 301, 310 (4th Cir. 2001) (third alteration in original) (citation and internal quotation marks omitted).

The under-color-of-state-law element, which is equivalent to the "state action" requirement under the Fourteenth Amendment,

> reflects judicial recognition of the fact that most rights secured by the Constitution are protected only against infringement by governments. This fundamental limitation on the scope of constitutional guarantees preserves an area of individual freedom by limiting the reach of federal law and avoids imposing on the State, its agencies or officials, responsibility for conduct for which they cannot fairly be blamed.

*Id.* (quoting *Dowe v. Total Action Against Poverty in Roanoke Valley,* 145 F.3d 653, 658 (4th Cir. 1998)) (internal citations and quotation marks omitted). Nevertheless, "the deed of an ostensibly private organization or individual" may at times be treated "as if a State

has caused it to be performed." *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001). Specifically, "state action may be found if, though only if, there is such a 'close nexus between the State and the challenged action' that seemingly private behavior 'may be fairly treated as that of the State itself.'" *Id.* (quoting *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974)). State action requires both an alleged constitutional deprivation "caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State . . . or by a person for whom the State is responsible" and that "the party charged with the deprivation [is] a person who may fairly be said to be a state actor." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982). A determination of whether a private party's allegedly unconstitutional conduct is fairly attributable to the State requires the court to "begin[ ] by identifying 'the specific conduct of which the plaintiff complains.'" *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 51 (1999) (quoting *Blum* v. *Yaretsky*, 457 U.S. 991, 1004 (1982)).

**Motion to Dismiss Standard**

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a motion to dismiss for failure to state a claim should not be granted unless it appears certain that the plaintiff can prove no set of facts which would support its claim and entitle it to relief. When considering a motion to dismiss, the court should "accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). However, the court "need not accept the legal conclusions drawn from the facts" nor "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Eastern Shore Mkts., Inc. v. J.D. Assocs. Ltd.*

*P'ship*, 213 F.3d 175, 180 (4th Cir. 2000).  Further, for purposes of a Rule 12(b)(6) motion, a court may rely on only the complaint's allegations and those documents attached as exhibits or incorporated by reference.  *See Simons v. Montgomery Cnty. Police Officers*, 762 F.2d 30, 31 (4th Cir. 1985).  If matters outside the pleadings are presented to and not excluded by the court, the motion is treated as one for summary judgment under Rule 56 of the Federal Rules of Civil Procedure.  Fed. R. Civ. P. 12(d).

With respect to well-pleaded allegations, the United States Supreme Court explained the interplay between Rule 8(a) and Rule 12(b)(6) in *Bell Atlantic Corp. v. Twombly*:

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

550 U.S. 544, 555 (2007) (footnote and citations omitted); *see also* 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1216, at 235–36 (3d ed. 2004) ("[T]he pleading must contain something more . . . than a bare averment that the pleader wants compensation and is entitled to it or a statement of facts that merely creates a suspicion that the pleader might have a legally cognizable right of action.").

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

6

alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556). The plausibility standard reflects the threshold requirement of Rule 8(a)(2)—the pleader must plead sufficient facts to show he is entitled to relief, not merely facts consistent with the defendant's liability. *Twombly*, 550 U.S. at 557 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Iqbal*, 556 U.S. at 678 ("Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" (quoting *Twombly*, 550 U.S. at 557)). Accordingly, the plausibility standard requires a plaintiff to articulate facts that, when accepted as true, demonstrate that the plaintiff has stated a claim that makes it plausible the plaintiff is entitled to relief. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678).

## DISCUSSION

**Byars's Motion to Dismiss**

Byars contends he should be dismissed from this action because (1) the Complaint appears to identify Byars as a defendant only in his official capacity and, in his official capacity, he is entitled to immunity pursuant to the Eleventh Amendment; (2) to the extent Plaintiff alleges a claim against Byars in his individual capacity, Byars is entitled to qualified immunity; and (3) to the extent Plaintiff alleges a claim under a theory of respondeat superior, Plaintiff has failed to allege facts to support such a claim. [Doc. 26.] Plaintiff argues he has alleged Byars is liable in his individual capacity because Plaintiff informed

Byars that Plaintiff's grievance was being held improperly and asked Byars to "make the attorney release the grievance so that it would proceed forward in order for plaintiff to collect his back wages owed to him by SCDC," yet Byars allowed Summers to hold Plaintiff's grievance. [Doc. 30 at 2.]

Even accepting as true all well-pled allegations, viewing the Complaint in the light most favorable to Plaintiff, and liberally construing the Complaint, Plaintiff has failed to plead sufficient allegations to state a claim against Byars in his individual capacity.[3]  At most, Plaintiff has alleged Byars is liable in his individual capacity under a theory of supervisory liability.  Because there is no doctrine of respondeat superior in § 1983 claims, *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691–94 (1978), a defendant is liable in his individual capacity only for his personal wrongdoing or supervisory actions that violated constitutional norms, *see Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994) (setting forth elements necessary to establish supervisory liability under § 1983). A plaintiff must establish three elements to prevail under § 1983 on a theory of supervisory liability:

---

[3] As Byars argues, to the extent Plaintiff brings this suit under § 1983 against Byars in his official capacity, Byars is entitled to immunity pursuant to the Eleventh Amendment from Plaintiff's claims for monetary damages.  The Eleventh Amendment prohibits federal courts from entertaining an action against a state.  *See, e.g.*, *Alabama v. Pugh*, 438 U.S. 781, 782 (1978) (per curiam) (citations omitted); *Hans v. Louisiana*, 134 U.S. 1, 10–11 (1890).  Further, Eleventh Amendment immunity "extends to 'arm[s] of the State,' including state agencies and state officers acting in their official capacity," *Cromer v. Brown*, 88 F.3d 1315, 1332 (4th Cir. 1996) (alteration in original) (internal citations omitted), because "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office . . . [and] is no different from a suit against the State itself," *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (internal citation omitted).  Therefore, Eleventh Amendment immunity protects state agencies and state officials sued in their official capacity from liability for monetary damages under 42 U.S.C. § 1983. *Id.*  As a result, to the extent Plaintiff has alleged claims under § 1983 for monetary damages against Byars in his official capacity, those claims must be dismissed because Byars in his official capacity is entitled to immunity pursuant to the Eleventh Amendment.

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices[]"; and (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.[4]

*Id.* (citations omitted).

Here, assuming without deciding Plaintiff has adequately pled the first two elements of a supervisory liability claim, Plaintiff has failed to adequately plead an affirmative causal link between Byars's alleged inaction and any constitutional injury suffered by Plaintiff. Specifically as to Byars, Plaintiff alleges he made Byars aware that, by not allowing Plaintiff's grievance to go forward so he could recover the illegally taken wages, Byars was violating Plaintiff's due process and equal protection rights. [Doc. 1 ¶¶ 4–6; *see* Doc. 30 at 2 ("Plaintiff made defendant Byars express[]ly aware by writing him a letter more than

---

[4]Stated differently,

> "[A]bsent an allegation that a named defendant has personally subjected the plaintiff to a deprivation of his constitutional rights or has caused the conduct complained of or participated in some manner in the allegedly unlawful actions of his employee or subordinate officer, this Court has held a complaint insufficient to state a claim against such defendant under § 1983."

*Thompson v. McCoy*, 425 F. Supp. 407, 411 (D.S.C. 1976) (quoting *Knipp v. Weikle*, 405 F. Supp. 782 (N.D. Ohio 1975)). A plaintiff's burden to establish a claim based on supervisory liability is a heavy one; in fact, the Supreme Court in *Iqbal* may have entirely abrogated supervisory liability in *Bivens* actions. *See Iqbal*, 556 U.S. at 693 (Souter, J., dissenting) ("Lest there be any mistake, . . . the majority is not narrowing the scope of supervisory liability; it is eliminating *Bivens* supervisory liability entirely. The nature of a supervisory liability theory is that the supervisor may be liable, under certain conditions, for the wrongdoing of his subordinates, and it is this very principle that the majority rejects."). A *Bivens* action "is the 'federal analog to suits brought against state officials under . . . § 1983.'" *Id.* at 675–76 (quoting *Hartman v. Moore*, 547 U.S. 250, 254 (2006)). Therefore, the Supreme Court's reasoning may extend to abrogate supervisory liability in § 1983 actions as well as *Bivens* actions. *See Jones v. Corr. Care Solutions*, No. 0:09-cv-269, 2010 WL 2639788, at \*2 (D.S.C. June 7, 2010) (noting that, under *Iqbal*, supervisory liability may no longer be a viable § 1983 claim).

two years ago, and informed him that the attorney for SCDC defendant Summers had been holding plaintiff's grievance for three years, and would he please make the attorney release the grievance so that it would proceed forward in order for plaintiff to collect his back wages owed to him by SCDC.").] Further, Plaintiff alleges he "has been subjected to different treatment than other inmates by defendants solely to prevent [Defendants] from paying the money back that SCDC has illegally taken from him." [Doc. 1 ¶ 7.] These allegations fail to adequately plead that the alleged violations of Plaintiff's due process and equal protection rights were causally related to Byars's failure to compel a response to Plaintiff's grievance. Rather, at most, Plaintiff has pled Byars failed to remedy the alleged due process and equal protection violations.[5] Accordingly, Plaintiff has failed to plead facts sufficient to establish Byars is liable under a theory of supervisory liability, and the Court recommends the Complaint be dismissed as to Byars for Plaintiff's failure to state a claim upon which relief can be granted.

**Summers's Motion to Dismiss**

Summers contends the Complaint should be dismissed for Plaintiff's failure to exhaust his administrative remedies. [Doc. 37 at 7–15, 17–18.] Specifically, Summers argues Plaintiff filed this action without receiving an answer to his Step 2 appeal, which he

---

[5]What is more, the Court is not convinced Plaintiff has pled either Defendant violated a constitutional right; it appears Plaintiff is merely challenging Defendants' failure to follow the SCDC grievance procedure. [*See* Doc. 1.] The law is well settled that there is no constitutional right to a grievance procedure. *Jones v. N.C. Prisoners' Labor Union, Inc.*, 433 U.S. 119, 137–38 (1977). Even if the prison provides for a grievance procedure, violations of those procedures do not amount to a civil rights cause of action. *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (dismissing the plaintiff's claim that he was retaliated against when he was barred access to the grievance process because "the Constitution creates no entitlement to grievance procedures or access to any such procedure"); *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988) (holding a prison official's failure to comply with the state's grievance procedure is not actionable under § 1983); *Doans v. Rice*, 831 F.2d 1057 (4th Cir. 1987) (unpublished table decision) (noting inmate grievance procedures are not constitutionally required).

filed just before he filed this action in late May 2012, and therefore, Plaintiff has failed to avail himself of the relief available to him in state forums. [*Id.* at 13–15.] Plaintiff contends that, in contravention of SCDC policy, the response to his Step 1 grievance was four and one-half years late, was made by Summers rather than the warden, and was unsigned. [Doc. 41 at 2.]  Further, Plaintiff argues his administrative remedies should be deemed exhausted because he did not receive a timely response to his grievance.  [*See id.* (citing *Whitington v. Ortiz*, 472 F.3d 804, 807–08 (10th Cir. 2007), which states, "[A] prisoner cannot be required to wait indefinitely for a response to his final grievance before he may seek judicial review.  That is, when prison officials fail to timely respond to a grievance, the prisoner has exhausted 'available' administrative remedies under the PLRA.").]

Section 1997e(a) of the Prison Litigation Reform Act ("PLRA") provides that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). As the Supreme Court observed:

> Beyond doubt, Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case.  In some instances, corrective action taken in response to an inmate's grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation.  In other instances, the internal review might filter out some frivolous claims.  And for cases ultimately brought to court, adjudication could be facilitated by an administrative record that clarifies the contours of the controversy.

*Porter v. Nussle*, 534 U.S. 516, 524–25 (2002) (internal citations and quotations omitted). Consequently, the PLRA's exhaustion requirement is mandatory and "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Id.* at 524, 532. The exhaustion requirement applies even if the relief sought in the civil action is not available in the administrative proceedings. *See Booth v. Churner*, 532 U.S. 731, 741 (2001).

Exhaustion is defined by each prison's grievance procedure, not the PLRA; a prisoner must comply with his prison's grievance procedure to exhaust his administrative remedies. *Jones v. Bock*, 549 U.S. 199, 218 (2007). An inmate's failure to "properly take each step within the administrative process . . . bars, and does not just postpone, suit under § 1983." *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002); *see also White v. McGinnis*, 131 F.3d 593, 595 (6th Cir. 1997) (upholding dismissal of an inmate's complaint because the inmate failed to proceed beyond the first step in the administrative grievance process). *But see Jones*, 549 U.S. at 219–24 (rejecting "total exhaustion rule" and holding that when presented with a complaint containing exhausted and unexhausted claims, courts should "proceed[] with the good and leave[] the bad"). Courts within the District of South Carolina have found an inmate exhausts his administrative remedies when he completes Step 2 of the SCDC grievance procedure, and § 1997e(a) does not require inmates to further appeal to South Carolina's Administrative Law Court. *See, e.g.*, *Ayre v. Currie*, No. 05-3410, 2007 WL 3232177, at *7 n.5 (D.S.C. Oct. 31, 2007); *Charles v. Ozmint*, No. 05-2187, 2006 WL 1341267, at *4 (D.S.C. May 15, 2006).

Exhaustion is an affirmative defense; an inmate is not required to plead exhaustion in his complaint. *Jones*, 549 U.S. at 211–12; *Anderson v. XYZ Corr. Health Servs., Inc.*, 407 F.3d 674, 681 (4th Cir. 2005). Further, "[w]hen a prisoner files a grievance and has not received a timely determination, the grievance may be considered exhausted under the PLRA." *Williams v. Loyd*, No. 2:09-2289-JFA-RSC, 2010 WL 3609790, at *4 (D.S.C. Apr. 28, 2010) (listing cases holding that administrative remedies are deemed exhausted when prison officials fail to timely respond to a properly filed grievance), *Report and Recommendation adopted by* 2010 WL 3609512 (D.S.C. Sept. 13, 2010).

Here, in response to special interrogatories by the Court prior to service of the Complaint, Plaintiff provided excerpts from GA-01.12 regarding the time limits for SCDC to respond to inmate grievances. [Doc. 15-3.] In pertinent part, the excerpts state, "Under no circumstances will the grievance process exceed 180 days." [*Id.* ¶ 11.] Summers does not dispute Plaintiff's allegation that Plaintiff did not receive a response to his June 2007 Step 1 grievance until May 2012 [*see* Doc. 37 at 13–14], which was considerably beyond the 180-day period for resolving inmate grievances. The weight of the case law addressing this issue holds a prisoner's claim should be deemed exhausted when the inmate fails to receive a timely response to his grievance.[6] *See, e.g.*, *Whitington*, 472 F.3d at 807–08;

---

[6]Some courts have held that, even though the inmate did not receive a timely response to his grievance, the inmate's administrative remedies will not be deemed exhausted if the inmate could have continued to proceed through the administrative grievance process. *See, e.g.*, *Jernigan v. Stuchell*, 304 F.3d 1030, 1032–33 (10th Cir. 2002) (affirming dismissal of action for the plaintiff's failure to exhaust administrative remedies where the plaintiff filed suit rather than cure a deficiency in the appeal of his unanswered grievance and where the plaintiff did not comply with the relevant grievance policy, which "contain[ed] time limits on responses, and also provide[d] that if an inmate d[id] not receive a response from the warden within thirty days after submission of the grievance, the inmate may send the grievance with evidence of its prior submission to an administrative review authority"); *cf. Foulk v. Charrier*, 262 F.3d 687, 698 (8th Cir. 2001) (holding the district court did not err in declining to dismiss the plaintiff's claim for failure to exhaust administrative remedies where the defendant failed to show the plaintiff could have filed a grievance despite the prison's failure to respond to the plaintiff's informal resolution request). However, in this case, the record before the

*Boyd v. Corrs. Corp. of Am.*, 380 F.3d 989, 996 (6th Cir. 2004) ("Following the lead of the four other circuits that have considered this issue, we conclude that administrative remedies are exhausted when prison officials fail to timely respond to a properly filed grievance."); *Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002) ("We join the Eighth and Fifth circuits on this issue because we refuse to interpret the PLRA 'so narrowly as to . . . permit [prison officials] to exploit the exhaustion requirement through indefinite delay in responding to grievances.'" (alterations in original) (citation omitted)).  Given that five years elapsed before Plaintiff received a response to his Step 1 grievance, Plaintiff's grievance should be considered exhausted under the PLRA, and Summers's motion to dismiss for failure to exhaust should be denied.

---

Court at this procedural posture reveals that, for the grievance procedure to proceed, Plaintiff was not required to undertake any further action when he failed to receive a timely response to his Step 1 grievance: "If, at the institutional level, the response to the grievance exceeds the established time limits, the grievance will *automatically* proceed to the next level of appeal." [Doc. 15-3 ¶ 13.6 (emphasis added).] Further, Summers's argument that Plaintiff should have exercised remedies within the state judicial system to effect a speedier response to his grievance [Doc. 37 at 14–17] is of no moment, as the PLRA requires only that an inmate exhaust available *administrative* remedies, 42 U.S.C. § 1997e(a); *see also Jones*, 549 U.S. at 218 ("Compliance with *prison* grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" (emphasis added)); *Porter*, 534 U.S. at 524–25 ("[T]o reduce the quantity and improve the quality of prisoner suits . . . Congress afforded corrections officials time and opportunity to address complaints *internally* before allowing the initiation of a federal case." (emphasis added)); *Pozo*, 286 F.3d at 1024 ("Exhaustion under § 1997e(a) is administrative only; a prisoner who uses all administrative options that the state offers need not also pursue judicial review in state court."); *Ayre*, 2007 WL 3232177, at *7 n.5 ("To the extent Defendants now argue that Plaintiff failed to exhaust his administrative remedies by not appealing any denial of grievances he had filed to the South Carolina administrative law court, even assuming for purposes of summary judgment that Plaintiff did not appeal any denied grievances to the administrative law court, that would not be grounds for dismissal of this action.  The fact that the South Carolina Legislature made a court available to prisoners who wanted to appeal a final decision by a jail facility denying a grievance does not alter the federal PLRA by extending its administrative exhaustion requirement to include exhaustion in all state judicial forums.  In § 1983 matters, Congress only intended that 'administrative remedies' be satisfied."); *Brown v. Evans Corr. Inst. Med. Staff*, No. 2:06-2464-DCN-RSC, 2007 WL 1290359, at *4 (D.S.C. Apr. 30, 2007) ("In sum, the fact that the South Carolina legislature made a court available to prisoners who wanted to appeal a final decision by the SCDC denying a SCDC grievance does not alter the federal PLRA by extending its administrative exhaustion requirement to include exhaustion in all state judicial forums.").

**CONCLUSION**

Wherefore, based upon the foregoing, the Court recommends Byars's motion to dismiss [Doc. 26] be GRANTED and Summers's motion to dismiss [Doc. 37] be DENIED.

IT IS SO RECOMMENDED.

s/Jacquelyn D. Austin  
United States Magistrate Judge

March 11, 2013  
Greenville, South Carolina